**THOMPSON COBURN LLP**
**LUKAS SOSNICKI, CSB 295895**
**lsosnicki@thompsoncoburn.com**
**10100 Santa Monica Blvd., Suite 500**
**Los Angeles, California 90067**
**Tel: 310.282.2500 / Fax: 310.282.2501**

Attorneys for Defendant HIGHER
EDUCATION LOAN AUTHORITY OF
THE STATE OF MISSOURI

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSHUA MUNOZ,<br><br>          Plaintiff,<br><br>     v.<br><br>HIGHER EDUCATION LOAN AUTHORITY OF THE STATE OF MISSOURI (MOHELA); EXPERIAN INFORMATION SOLUTIONS, INC.; EQUIFAX INFORMATION SERVICES, LLC; TRANS UNION LLC; and DOES 1 through 10, inclusive,<br><br>          Defendants. | CASE NO. 3:23-cv-02001-CAB-KSC<br><br>Hon. Cathy Ann Bencivengo<br><br>**DEFENDANT HIGHER EDUCATION LOAN AUTHORITY OF THE STATE OF MISSOURI'S NOTICE OF MOTION AND MOTION FOR JUDGMENT ON THE PLEADINGS; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Hearing Date:  January 22, 2024<br><br>PER CHAMBERS RULES, NO ORAL ARGUMENT UNLESS SEPARATELY ORDERED BY THE COURT |

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on January 22, 2024, or as soon thereafter as the matter may be heard, Defendant Higher Education Loan Authority of the State of Missouri ("MOHELA") will and hereby does respectfully move this Court to grant MOHELA judgment on the pleadings on the claims against it in the Complaint (Dkt. 1).

MOHELA's Motion is based upon this Notice of Motion, the accompanying Brief in Support, the pleadings and papers on file in this action, the arguments of

counsel (if any), and any other matter that the Court may properly consider.

DATED:  December 18, 2023        **THOMPSON COBURN LLP**

By:  _____/s/ Lukas Sosnicki_____
**LUKAS SOSNICKI**
Attorneys for Defendant HIGHER
EDUCATION LOAN AUTHORITY OF
THE STATE OF MISSOURI

# **TABLE OF CONTENTS**

**Page**

I.    INTRODUCTION ..................................................................................... 1

II.   FACTUAL BACKGROUND ...................................................................... 2

    A.   Plaintiff and the Student Loans At Issue. ................................. 2

    B.   MOHELA .................................................................................. 3

III.  LEGAL STANDARD ............................................................................... 5

IV.  ARGUMENT ........................................................................................... 7

    A.   MOHELA IS IMMUNE AS PART OF THE STATE OF MISSOURI ............................................................................... 7

    B.   ALTERNATIVELY, MOHELA IS AN "ARM" OF THE STATE OF MISSOURI ENTITLED TO IMMUNITY ..................................... 8

        1.   While MOHELA is initially liable for a judgment against it, the State of Missouri may be functionally liable for a significant money judgment against MOHELA. .......................... 9

        2.   MOHELA performs central governmental functions. ................ 12

        3.   MOHELA possesses the authority to sue and be sued in its own name, but only in a court having jurisdiction "over the parties." ......................................................................... 14

        4.   MOHELA is entitled to hold and use property. ........................ 16

        5.   With respect to MOHELA's corporate status, Missouri statutes and case law view MOHELA as an "arm of the state." ............................................................................... 16

    C.   MOHELA IS ENTITLED TO JUDGMENT ON THE PLEADINGS WITH RESPECT TO PLAINTIFF'S RFDCPA CLAIM (COUNT III). ...................................................................... 19

        1.   MOHELA is exempted from liability under the FDCPA because it was, at all pertinent times, acting in its capacity as a bona fide fiduciary to USDOE. .......................................... 20

        2.   MOHELA is not a "debt collector" as it began servicing the student loans at or near origination and prior to default ....... 21

V.   CONCLUSION ...................................................................................... 23

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Aguon v. Commonwealth Ports Auth.*,
  316 F.3d 899 (9th Cir. 2003) ........................................................................ 11, 16

*Alaska Cargo Transp., Inc. v. Alaska R.R. Corp.*,
  5 F.3d 378 (9th Cir. 1993) ................................................................................ 17

*Atkins v. Lakes Crossing Center*,
  2010 WL 3385354 (D. Nev. Aug. 23, 2010) ...................................................... 14

*Belanger v. Madera Unified Sch. Dist.*,
  963 F.2d 248 (9th Cir. 1992) ................................................................. 11, 12, 15

*Biden v. Nebraska*,
  600 U.S. ----, 143 S.Ct. 2355, 216 L. Ed. 2d 1063 (2023) ...........................*passim*

*Bouissey v. Swift Transportation Co., Inc.*,
  Case No. 2:19-cv-03203-VAP-KKx, 2020 WL 9935810 (C.D. Cal.
  May 23, 2020) .................................................................................................... 6

*Brumberger v. Sallie Mae Servicing Corp.*,
  84 Fed. Appx. 458 (5th Cir. 2004) ...................................................................... 22

*Cedeno v. Navient Sols., Inc.*,
  No. 16-61049-CIV, 2017 WL 7794290 (S.D. Fla. Apr. 26, 2017) ...................... 22

*Chavez v. United States*,
  683 F.3d 1102 (9th Cir. 2012) ........................................................................ 5, 6

*Diaz v. First Marblehead Corp.*,
  643 Fed. Appx. 916 (11th Cir. 2016) .................................................................. 22

*Espinosa v. Trinity Fin. Servs., LLC*,
  No. 217CV06310SVWAGRX, 2017 WL 6942662 (C.D. Cal. Oct.
  19, 2017) ............................................................................................................ 23

*Finley v. Capital One*,
  No. 16-CV-03192-YGR, 2017 WL 1365207 (N.D. Cal. Apr. 14,
  2017) .................................................................................................................... 6

*Good v. United States Dep't of Educ.*,
    2022 WL 2191758 (D. Kan. June 16, 2022), *appeal docketed*, No.
    22-3286 (10th Cir. Dec. 30, 2022) ........................................................... 14, 15, 18

*Gordon v. Duncan*,
    2010 WL 1462555 (D.Or. 2010) ........................................................................ 19

*Gowens v. Capella Univ., Inc.*,
    2020 WL 10180669 (N.D. Ala. June 1, 2020) .................................. 10, 16, 17, 18

*Haysbert v. Navient Sols., Inc.*,
    No. CV 15-4144 PSG (EX), 2016 WL 890297 (C.D. Cal. Mar. 8,
    2016) ....................................................................................................................... 22

*Hess v. Port Auth. Trans–Hudson Corp.*,
    513 U.S. 30 (1994) ................................................................................................ 9

*Jones v. Bock*,
    549 U.S. 199 (2007) .............................................................................................. 6

*Jones v. Pennsylvania Higher Educ. Assistance Agency*,
    No. CV1600107RSWLAFMX, 2017 WL 4594078 (C.D. Cal. July
    24, 2017) ............................................................................................................... 22

*Karns v. Shanahan*,
    879 F.3d 504 (3d Cir. 2018) .......................................................................... 13, 16

*Kemp v. Wells Fargo Bank, N.A.*,
    No. 17-CV-01259-MEJ, 2017 WL 4805567 (N.D. Cal. Oct. 25,
    2017) ..................................................................................................................... 19

*Khmaissi v. Navient Sols., LLC*,
    No. C16-5994 BHS, 2018 WL 4811898 (W.D. Wash. Oct. 4, 2018) ................. 22

*U.S. ex rel. King v. Univ. of Texas Health Sci. Center-Houston*,
    544 F. App'x 490 (5th Cir. 2013) ................................................................... 15, 16

*Kozaczek v. New York Higher Educ. Services Corp.*,
    503 Fed. Appx. 60 (2d Cir. 2012) ....................................................................... 19

*Lang v. Pennsylvania Higher Educ. Assistance Agency*,
    610 F. App'x 158 (3d Cir. 2015) ......................................................................... 13

*In re Lazar*,
    237 F.3d 967 (9th Cir. 2001) ........................................................ 8, 9, 12

*Lightfoot v. Henry Cty. Sch. Dist.*,
    771 F.3d 764 (11th Cir. 2014) ............................................................ 8

*Lima v. United States Dept. of Education*,
    947 F.3d 1122 (9th Cir. 2020) ..................................................... 20, 21

*Little v. Tennessee Student Assistance Corp.*,
    537 F. Supp. 2d 942 (W.D. Tenn. 2008) ........................................... 19

*Manders v. Lee*,
    338 F.3d 1304 (11th Cir. 2003) .......................................................... 9

*Mitchell v. Los Angeles Cmty. Coll. Dist.*,
    861 F.2d 198 (9th Cir. 1988) ...................................................... 8, 16

*Murungi v. Texas Guaranteed*,
    693 F. Supp. 2d 597 (E.D. La.), *aff'd*, 402 F. App'x 849 (5th Cir.
    2010) ......................................................................................... 20, 21

*Neal v. Am. Educ. Servs.*,
    2019 WL 1746065 (E.D. Cal. 2019) .................................................. 22

*Nebraska v. Biden*,
    52 F.4th 1044 (8th Cir. 2022) .................................................. 10, 17, 18

*Pub. Sch. Ret. Sys. of Missouri v. State St. Bank & Tr. Co.*,
    640 F.3d 821 (8th Cir. 2011) ...................................................... 10, 15

*Rockridge Tr. v. Wells Fargo, N.A.*,
    985 F. Supp. 2d 1110 (N.D. Cal. 2013) ............................................. 20

*San Francisco Taxi Coalition v. City and County of San Francisco*,
    979 F.3d 1220 (9th Cir. 2020) ............................................................ 6

*Sato v. Orange Cty. Dept. of Educ.*,
    861 F.3d 923 (9th Cir. 2017) ........................................................ 9, 15

*Skerry v. Massachusetts Higher Educ. Assistance Corp.*,
    73 F. Supp. 2d 47 (D. Mass. 1999) .................................................. 22

*Sorrell v. Illinois Student Assistance Comm'n*,
    314 F. Supp. 2d 813 (C.D. Ill. 2004) ................................................ 19

*Spyer v. Navient Solutions, Inc.*,
    2016 WL 1046789 (D.N.J. 2016) .......................................................................... 22

*State Highway Comm'n of Wyoming v. Utah Const. Co.*,
    278 U.S. 194 (1929) .............................................................................................. 14

*Stoner v. Santa Clara Cnty. Office of Educ.*,
    502 F.3d 1116 (9th Cir. 2007) ................................................................................ 9

*Vogt v. Bd. Of Comm'rs of Orleans Levee Dist.*,
    294 F.3d 684 (5th Cir. 2002) .................................................................................. 8

*Webb v. Texas Higher Education Coordinating Board*,
    2014 WL 12594193 (W.D. Tex. Dec. 12, 2014) ...................................... 12, 14, 15

*Welch v. Texas Dept. of Highways & Public Transp.*,
    483 U.S. 468 (1987) .............................................................................................. 15

*United States ex. Rel Willette v. U. Mass., Worcester*,
    812 F.3d 35 (1st Cir. 2016), *cert. denied*, 137 S. Ct. 617 (2017) .......................... 9

*Willison v. Nelnet, Inc.*,
    850 F. App'x 389 (6th Cir. 2021) .......................................................................... 22

**Statutes**

15 U.S.C. § 1681s-2(b) ...................................................................................*passim*

15 U.S.C. §1692a(6) ............................................................................................... 20

15 U.S.C. § 1692a(6)(F)(i) ................................................................................. 2, 20

15 U.S.C. § 1692a(6)(F)(iii) ............................................................................. 2, 22

15 U.S.C. §§ 1692b to 1692j ................................................................................ 19

20 U.S.C. § 1087a, *et seq* .................................................................................... 1, 3

20 U.S.C. § 1087f(a) ................................................................................................ 3

Cal. Civ. Code § 1785.25(a) .................................................................................... 1

Cal. Civ. Code § 1788 ............................................................................................ 23

Cal. Civ. Code § 1788.17 .................................................................................. 1, 19

DEFENDANT MOHELA'S NOTICE OF MOTION AND MOTION FOR JUDGMENT ON THE PLEADINGS

Cal. Civ. Code § 1798.92 *et seq.* ................................................................. 1

Missouri Higher Education Loan Authority Act ........................................... 4

Pub. L. No. 89-329, 79 Stat. 1219 (1965) ................................................... 3

RSMo. § 173.005 ......................................................................................... 5

RSMo. § 173.007 ......................................................................................... 5

RSMo. § 173.350 ...................................................................................... 4, 7

RSMo. § 173.360 ................................................................................*passim*

RSMo. § 173.365 .................................................................................... 5, 13

RSMo. § 173.385 .............................................................................. 12, 14, 21

RSMo. § 173.385.1 ................................................................................. 4, 13

RSMo. § 173.385.2 ........................................................................................ 4

RSMo. § 173.387 ....................................................................................... 13

RSMo. § 173.390 ....................................................................................... 13

RSMo. § 173.392 .................................................................................. 12, 13

RSMo. § 173.405 ....................................................................................... 12

RSMo. § 173.410 ....................................................................................... 12

RSMo. § 173.415 ...................................................................................... 4, 16

RSMo. § 173.445 ......................................................................... 4, 5, 13, 16

**Other Authorities**

34 C.F.R. §§ 682.209-211, 215 .................................................................. 3

34 C.F.R. § 682.700(a) ............................................................................... 3

34 C.F.R. §§ 685.204-205, 208-209 ......................................................... 3

34 C.F.R. § 685.215 .......................................................................... 1, 3, 21

Fed. R. Civ. P. 7(a) .................................................................................... 5

Fed. R. Civ. P. 12(c) ...................................................................................... 5

Eleventh Amendment to the U.S. Constitution ..................................................*passim*

Wright & Miller, *Federal Practice and Procedure: Civil* § 1368 (2d ed. 1990) ...................................................................................... 6

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. INTRODUCTION

This is an identity theft case.  Plaintiff Joshua Munoz ("Plaintiff") alleges that, in the Summer of 2023, he learned that an imposter applied for several student loans using his personal identifying information.  *See* Complaint, at ¶¶ 13-14, 22-23.  But MOHELA is not responsible for that identity theft or liable for any harm to Plaintiff that may have resulted from a third party's alleged criminal acts.  In fact, MOHELA was ***completely uninvolved*** in the application for, approval of, or funding of the student loans in Plaintiff's name.  Instead, MOHELA, a non-profit entity created by Missouri statute, simply received the student loans for servicing from the United States Department of Education ("USDOE") shortly after they were disbursed (and before any default).  It is the USDOE, not MOHELA, that determines if the student loans at issue should be discharged on grounds of identity theft.

In its role as servicer for subsidized and unsubsidized Stafford student loans (approved and funded by the USDOE under the William D. Ford Direct Loan Program ("Direct Loan Program"), 20 U.S.C. § 1087a, *et seq*.), MOHELA's role is to assist Plaintiff through the federally-mandated process (*see* 34 CFR § 685.215) required to discharge his loans on the basis of identity theft, after Plaintiff disputed the loans' validity.  *See* MOHELA's Answer, Sixth Defense.

Plaintiff, a California resident, purports to assert claims against MOHELA, a public instrumentality and a body politic and corporate of the State of Missouri, for violations of: (i) the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681s-2(b) (Count I); (ii) the Consumer Credit Reporting Agencies Act ("CCRAA"), Cal. Civ. Code § 1785.25(a) (Count II); (iii) the Rosenthal Fair Debt Collection Practices Act ("RFDCPA"), Cal. Civ. Code § 1788.17 (Count III); and, (iv) the Identity Theft Act, Cal. Civ. Code § 1798.92 *et seq*. (Count IV)  *See* Complaint, at ¶¶ 27-52.

Judgment in MOHELA's favor is warranted.  MOHELA is, and at all times material hereto was, a public instrumentality and a body politic and corporate of the

State of Missouri. MOHELA is part of the State of Missouri, and thus is immune from suit in this Court under the Eleventh Amendment to the U.S. Constitution, which disallows suits against a state by a citizen of another state. *See Biden v. Nebraska*, 600 U.S. ----, 143 S.Ct. 2355, 2367, 2375, 216 L. Ed. 2d 1063 (2023). Alternatively, MOHELA is an "arm of the state" of Missouri under the Ninth Circuit's prevailing five factor test. Accordingly, this Court should enter judgment on the pleadings in favor of MOHELA and dismiss it from this case.

Moreover, even if MOHELA were not immune from suit in this Court under the Eleventh Amendment, judgment on the pleadings in MOHELA's favor is still warranted on Plaintiffs RFDCPA claim (Count III). That claim, which relies on incorporation of the federal Fair Debt Collection Practices Act ("FDCPA"), suffers from substantive legal deficiencies. *First*, the RFDCPA claim fails because MOHELA is exempted from liability under the FDCPA because its actions were, at all pertinent times, incidental to its "bona fide fiduciary obligation" to the Department, 15 U.S.C. § 1692a(6)(F)(i). *Second*, MOHELA is not a "debt collector" under the FDCPA, 15 U.S.C. § 1692a(6)(F)(iii), where it began servicing these student loans prior to default. Plaintiff's RFDCPA claims are predicated solely on alleged violations of the FDCPA, and the claims fail as a matter of law.

Accordingly, this Court should enter judgment on the pleadings in MOHELA's favor, and dismiss Plaintiff's claims against MOHELA with prejudice.

## II. FACTUAL BACKGROUND

### A. PLAINTIFF AND THE STUDENT LOANS AT ISSUE.

The Complaint is short on details. Plaintiff alleges he is the victim of identity theft as it pertains to student loans. *See* Complaint, at ¶ 13. Plaintiff also appears to allege that MOHELA began servicing the student loans from the very beginning. *Id.*, at ¶ 14. Plaintiff alleges that he learned about the student loans at issue in the Summer of 2023, and first provided notice to MOHELA of his position on July 19, 2023. *See* Complaint, at ¶ 23.

MOHELA's Answer fills in some of the gaps.  MOHELA alleges that USDOE's position is that Plaintiff is responsible for two subsidized Stafford Loans.  *See* Answer, at ¶ 13.  The first student loan had two disbursements, each in the amount of $875 and occurring on June 19 and July 3, 2023, respectively.  *Id.*  The second student loan was disbursed in the amount of $1,750 on September 6, 2023.  *Id.*  MOHELA received each of the loans at issue for servicing soon after disbursement and, accordingly, these loans were not in default at the time MOHELA began servicing them.  *Id.*, and Third Defense.  The process for discharge of these student loans is set by federal regulations, specifically 34 CFR § 685.215.  *See* Answer, Sixth Defense.  MOHELA has provided information to Plaintiff to allow him to proceed through the discharge process.  *Id.*

**B.    MOHELA**

Under the Higher Education Act, Pub. L. No. 89-329, 79 Stat. 1219 (1965) ("HEA"), and related statutes and regulations, USDOE issues a variety of loans and grants to students. This lawsuit focuses on student loans issued by USDOE as subsidized Stafford loans under the Direct Loan Program, 20 U.S.C. § 1087a *et seq.*, through which the federal government provides loans directly to eligible student borrowers.  Rather than self-service the Direct Loans, the Department contracts with third-party servicers to perform that function. *Id.* § 1087f(a). Every aspect of that servicing is highly regulated by the Department.[1]

MOHELA was created by the General Assembly of the State of Missouri through passage of House Bill (HB) 326, signed into law on June 15, 1981, in order to ensure that all eligible postsecondary education students have access to guaranteed

---

[1] The Department administers loan repayment generally (34 C.F.R. §§ 682.209, 685.208), income-based or income-contingent repayment plans (*Id.* §§ 682.215, 685.209), and deferments and forbearances (*Id.* §§ 682.210-211, 685.204-205). The Department has plenary authority to limit, suspend, or terminate the activities of a federal student loan servicer that violates its legal obligations or its contract with the Department. *Id.* § 682.700(a).

1   student loans. The legislation was amended[2] to provide MOHELA with generally

2   expanded powers to finance, originate, acquire, and service student loans, including,

3   but not limited to, those guaranteed or insured pursuant to the HEA.

4   MOHELA is, and at all times material hereto was, a public instrumentality and

5   a body politic and corporate of the State of Missouri. *See* Answer, ¶ 4, and First

6   Defense. Missouri statute declares MOHELA a state instrumentality: "The authority

7   is hereby declared to be performing a public function and to be a separate public

8   instrumentality of the state." RSMo. § 173.415.

9   MOHELA is organized and exists under the Missouri Higher Education Loan

10   Authority Act, RSMo, §§ 173.350 - 173.445. MOHELA's mission is "to assure that

11   all eligible postsecondary education students have access to student loans that are

12   guaranteed or insured, or both," and to provide funding for capital and technology

13   projects at Missouri's public colleges and universities. RSMo. § 173.360. Missouri

14   law requires MOHELA to contribute hundreds of millions of dollars to the State's

15   Lewis and Clark Discovery Fund ("LCD Fund"), RSMo. § 173.385.2, and MOHELA

16   has contributed millions more to the State of Missouri for grants and scholarships. *See*

17   *Biden*, 143 S. Ct. at 2366 (finding MOHELA's "profits help fund education in

18   Missouri," and noting MOHELA has provided $230 Million for development projects

19   at Missouri colleges and universities and almost $300 million in grants and

20   scholarships for Missouri students). MOHELA is also authorized to service student

21   loans for any owner thereof, regardless of whether such student loans are originated

22   in Missouri or outside Missouri. RSMo. § 173.385.1(18).

23   As demonstrated by the following non-inclusive list, MOHELA's structure is

24   consistent with that of other Missouri public instrumentalities:

25
26   • MOHELA's property, income, bonds, and activities are exempt from state taxation (RSMo. § 173.415);

27   • MOHELA is assigned to and reports to the Missouri Department of Higher

28
---
[2] Effective August 28, 1994, August 28, 2003, August 28, 2007, and May 2, 2008.

Education ("MDHE")[3] (RSMo. § 173.445);

- MOHELA reports on its financial condition to the MDHE annually (*Id.*);

- Five of the seven members of the MOHELA board are appointed directly by the Governor, and the other members are indirectly appointed by the Governor because one is a member of Missouri's Coordinating Board for Higher Education (appointed by the Governor) and the final board member is the Commission of the MDHE (appointed by the Governor) (RSMo. § 173.360);

- The Governor may remove any board member for cause (*Id.*); and,

- MOHELA meetings shall be open to the public (RSMo. § 173.365).

In 2011, MOHELA was selected through a competitive process by the USDOE to service Direct Loans on a national basis.  MOHELA remains a third-party agent of the Department and is not itself a party to the underlying Direct Loan contracts between the Department and its borrowers.

### III. LEGAL STANDARD

Fed. R. Civ. P. 12(c) permits a party, at any time after the close of the pleadings, to move for judgment on the pleadings.  Pleadings are considered closed after the filing of the complaint, answer, and any counter or cross-claims.  *See* Fed. R. Civ. P. 7(a).

In the Ninth Circuit, "[a]nalysis under Rule 12(c) is 'substantially identical' to analysis under Rule 12(b)(6) because, under both rules, 'a court must determine whether the facts alleged in the complaint, taken as true, entitle the plaintiff to a legal remedy.'"  *Chavez v. United States*, 683 F.3d 1102, 1108 (9th Cir. 2012) (quoting *Brooks v. Dunlop Mfg. Inc.,* No. C 10–04341 CRB, 2011 WL 6140912, at

---

[3] MDHE (now known as the Missouri Department of Higher Education and Workforce Development) is overseen by the Missouri Coordinating Board for Higher Education, which consists of nine members appointed by the Governor with the advice and consent of the Senate.  RSMo. § 173.005.  The Coordinating Board appoints the Commissioner of Higher Education.  RSMo. § 173.007.

*3 (N.D. Cal. Dec. 9, 2011)).  *See also San Francisco Taxi Coalition v. City and County of San Francisco*, 979 F.3d 1220, 1223 (9th Cir. 2020).  "'Judgment on the pleadings is properly granted when [, accepting all factual allegations in the complaint as true,] there is no issue of material fact in dispute, and the moving party is entitled to judgment as a matter of law.'"  *Chavez*, 683 F.3d at 1108 (quoting *Fleming v. Pickard,* 581 F.3d 922, 925 (9th Cir. 2009)) (alteration added by *Chavez* court).  *See also San Francisco Taxi Coalition*, 979 F.3d at 1223.  "If the complaint fails to articulate a legally sufficient claim, the complaint should be dismissed or judgment granted on the pleadings."  *Finley v. Capital One*, No. 16-CV-03192-YGR, 2017 WL 1365207, *2 (N.D. Cal. Apr. 14, 2017) (internal quotations and citations omitted).

A motion for judgment on the pleadings may be based on an affirmative defense, including facts of which a court can take judicial notice.  *See Bouissey v. Swift Transportation Co., Inc.*, Case No. 2:19-cv-03203-VAP-KKx, 2020 WL 9935810, at *2 (C.D. Cal. May 23, 2020) ("An affirmative defense that appears from the face of the pleadings and judicially noticeable documents is the proper subject of motion to dismiss or motion for judgment on the pleadings,") (citing *ASARCO, LLC v. Union Pacific R.R. Co.*, 765 F.3d 999, 1004 (9th Cir. 2014)).  "If the affirmative defense clearly is established in the pleadings, as, for example, when a statute of limitations defense is apparent on the face of the complaint and no question of fact exists, then a judgment on the pleadings may be appropriate." Wright & Miller, *Federal Practice and Procedure: Civil* § 1368 at p. 530 (2d ed. 1990) (citing *Blonder–Tongue Labs., Inc. v. University of Ill. Found.,* 402 U.S. 313 (1971)).  As the Supreme Court has explained, "[a] complaint is subject to dismissal for failure to state a claim if the allegations, taken as true, show the plaintiff is not entitled to relief.  If the allegations, for example, show that relief is barred by [an affirmative defense], the complaint is subject to dismissal for failure to state a claim." *Jones v. Bock*, 549 U.S. 199, 215 (2007).

## IV. ARGUMENT

### A.   MOHELA IS IMMUNE AS PART OF THE STATE OF MISSOURI.

The Eleventh Amendment to the U.S. Constitution bars this lawsuit against MOHELA.  The Eleventh Amendment provides that "[t]he Judicial power of the Unites States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."  U.S. Const. amend. XI.   Thus, the Eleventh Amendment disallows suits against a state by a citizen from another state as is the case here. The Supreme Court of the United States recently held that MOHELA is "part of" the State of Missouri.  *Biden*, 143 S.Ct. at 2367, 2375.  MOHELA has no legal identity apart from the State of Missouri and, as such, is immune from liability in this case pursuant to the Eleventh Amendment.

By way of further background, MOHELA is, and at all times material hereto was, a public instrumentality and a body politic and corporate of the State of Missouri. MOHELA is organized and exists under the Missouri Higher Education Loan Authority Act.  *See* RSMo §§ 173.350 - 173.445.  Earlier this year, the Supreme Court of the United States addressed MOHELA's relationship to the State of Missouri when considering the United States Secretary of Education's 2022 student loan debt forgiveness plan in *Biden v. Nebraska*.

The Supreme Court first considered whether the State of Missouri had standing to challenge the plan and, as part of that analysis, evaluated the relationship between the State of Missouri and MOHELA.  143 S. Ct. at 2358.  The Court held:  "By law and function, MOHELA is an instrumentality of Missouri: It was created by the State to further a public purpose, is governed by state officials and state appointees, reports to the State, and may be dissolved by the State.  The Secretary's plan will cut MOHELA's revenues, impairing its efforts to aid Missouri college students. This acknowledged harm to MOHELA in the performance of its public function is necessarily a direct injury to Missouri itself."  143 S.Ct. at 2366.

DEFENDANT MOHELA'S NOTICE OF MOTION AND MOTION FOR JUDGMENT ON THE PLEADINGS

Rejecting arguments that MOHELA has a legal identity separate from the State of Missouri, the Court stated that "such an instrumentality—created and operated to fulfill a public function—nonetheless remains '(for many purposes at least) part of the Government itself.'"  *Id.* at 2367 (quoting *Lebron v. National Railroad Passenger Corp.*, 513 U.S. 374, 397 (1995)).   Finding that the State of Missouri possessed standing, the Court held that the Secretary of Education's plan "harms MOHELA in the performance of its public function and so directly harms the State that created and controls MOHELA."  *Id.* at 2368; *see also id.* at 2375 ("Today, we have concluded that an instrumentality created by Missouri, governed by Missouri, and answerable to Missouri **is indeed part of Missouri**[.]") (emphasis added).   Accordingly, because the Supreme Court has ruled that MOHELA is part of the State of Missouri, it is immune from this lawsuit brought by Plaintiff, a citizen of another state.

## B.   ALTERNATIVELY, MOHELA IS AN "ARM" OF THE STATE OF MISSOURI ENTITLED TO IMMUNITY.

Though, by its terms, the Eleventh Amendment immunizes only "States" against private actions brought by citizens of other states, *see* U.S. Const. amend. XI, it is well established that suits against 'arms' of a state may nonetheless be barred by the Eleventh Amendment.  *See, e.g., Mitchell v. Los Angeles Cmty. Coll. Dist.*, 861 F.2d 198, 201 (9th Cir. 1988).

MOHELA is also immune under the Ninth Circuit's five factor test for Eleventh Amendment immunity. Federal law governs whether a state agency is an "arm of the state" such that it is entitled to such immunity. *See In re Lazar*, 237 F.3d 967, 982-83 (9th Cir. 2001) ("'[W]hether a particular state agency ... is an arm of the State ... is a question of federal law.'") (quoting *Regents of the Univ. of Cal. V. Doe*, 519 U.S. 425, 429 n.5 (1997)). *See also Vogt v. Bd. Of Comm'rs of Orleans Levee Dist.*, 294 F.3d 684, 690 n. 4 (5th Cir. 2002) ("Furthermore, whether a particular political entity is an arm of the state is a question of federal law."); *Lightfoot v. Henry Cty. Sch. Dist.*, 771 F.3d 764, 771 (11th Cir. 2014) ("[I]t is federal law, not state law, that ultimately

governs whether an entity is immune under the Eleventh Amendment."). That question, however, "can be answered only after considering the provisions of state law that define the agency's character." *In re Lazar*, 237 F.3d at 982-83. *See also United States ex. Rel Willette v. U. Mass., Worcester*, 812 F.3d 35, 40 (1st Cir. 2016), *cert. denied*, 137 S. Ct. 617 (2017); *Manders v. Lee*, 338 F.3d 1304, 1309 (11th Cir. 2003) ("The issue of whether an entity is an 'arm of the State' for Eleventh Amendment purposes is ultimately a question of federal law. But the federal question can be answered only after considering provisions of state law.").

When confronted with a governmental entity asserting Eleventh Amendment immunity as an arm of the state, the Ninth Circuit considers five factors:

> (1) whether a money judgment would be satisfied out of state funds; (2) whether the entity performs central governmental functions; (3) whether the entity may sue or be sued; (4) whether the entity has the power to take property in its own name or only the name of the state; and (5) the corporate status of the entity.

> *Mitchell*, 861 F.2d at 201*; Sato v. Orange Cty. Dept. of Educ.*, 861 F.3d 923, 928-29 (9th Cir. 2017). "To determine these factors, the court looks to the way state law treats the entity." *Mitchell,* 861 F.2d at 201. Applied here, well-established Eleventh Amendment doctrine dictates that MOHELA is an arm of the State of Missouri and shares in its sovereign immunity.

> **1.      While MOHELA is initially liable for a judgment against it, the State of Missouri may be functionally liable for a significant money judgment against MOHELA.**

The Ninth Circuit has stated "[t]he first *Mitchell* factor—whether a money judgment against the government entity would be satisfied out of state funds—is the most important." *Sato*, 861 F.3d at 929. It is a "well-established Eleventh Amendment principle" that an "entity may be an arm of the state protected by sovereign immunity where the state is ***functionally*** liable, even if not legally liable, on money judgments against the state entity." *Stoner v. Santa Clara Cnty. Office of Educ.,* 502 F.3d 1116, 1122 (9th Cir. 2007) (emphasis added); *see also Hess v. Port Auth. Trans–Hudson Corp.,* 513 U.S. 30, 50 (1994) ("[W]here an agency is so structured that, as a practical matter, if the agency is to survive, a judgment must expend itself against state

1  treasuries, common sense and the rationale of the eleventh amendment require that

2  sovereign immunity attach to the agency.")

3  Recently, in *Biden*, the Supreme Court stated unequivocally that financial harm

4  to MOHELA constitutes harm to the State of Missouri. The Court held that the

5  Secretary of Education's student loan debt cancellation plan "harms MOHELA in the

6  performance of its public function and so directly harms the State that created and

7  controls MOHELA." *Biden*, 143 S.Ct. at 2368. Accordingly, any judgment against

8  MOHELA here would necessarily harm the State of Missouri. That is, by definition,

9  functional liability. *See, e.g., Pub. Sch. Ret. Sys. of Missouri v. State St. Bank & Tr.*

10 *Co.*, 640 F.3d 821, 830 (8th Cir. 2011) (Considering the practical impact of a

11 judgment against a state-created entity, the Eighth Circuit Court of Appeals noted that

12 the question is one of the "potential" impact; "whether a money judgment in this

13 particular case will actually [impact] the State of Missouri's treasury is **not** the

14 relevant inquiry.") (emphasis added).

15 Even before the *Biden* decision, other federal courts considering this issue came

16 to similar conclusions. In *Gowens v. Capella Univ., Inc.,* 2020 WL 10180669, at *1

17 (N.D. Ala. June 1, 2020), a consumer brought similar FCRA claims against MOHELA

18 based on alleged identity theft. The Court concluded that "a judgment against

19 MOHELA may result in a practical, rather than legal, impact on the State of

20 Missouri." *Id.* at *4. That is because a judgment could impair MOHELA's obligation

21 to contribute millions to fund capital projects at Missouri colleges and universities or

22 MOHELA providing tens of millions of dollars to Missouri for grants and

23 scholarships. *Id.* Thus, the *Gowens* court concluded "there is a potential that the State

24 of Missouri would be functionally liable for a judgment against MOHELA, despite

25 MOHELA's direct liability for such a judgment." *Id.* This point was reaffirmed by the Eighth Circuit Court of Appeals, which stated that "financial impact

27 on MOHELA ... threatens to independently impact Missouri" by preventing or

28 delaying MOHELA's contributions to the LCD Fund. *Nebraska v. Biden*, 52 F.4th

DEFENDANT MOHELA'S NOTICE OF MOTION AND MOTION FOR JUDGMENT ON THE PLEADINGS

1044, 1047 (8th Cir. 2022). Therefore, a judgment against MOHELA threatens financial injury to the State of Missouri because Missouri may be functionally liable for a judgment against MOHELA.

A judgment could also reduce the funds available for MOHELA to carry out its state programs, absent a special appropriation by the state legislature. And, notably, there is no statutory prohibition against the State paying a judgment against MOHELA. While admittedly there is no statute that requires the State to cover a judgment against MOHELA, this factor still tips towards MOHELA because the State could be functionally liable for a judgment against MOHELA. *See Aguon v. Commonwealth Ports Auth.*, 316 F.3d 899, 902-03 (9th Cir. 2003) (holding the first and second factors under *Mitchell* "weigh heavily" in favor of finding an entity to be an arm of the state where, if the entity "were to be faced with a large money judgment which it could not pay," the state "would be compelled" to respond "with an appropriation" to replace the entity's functions); *Belanger v. Madera Unified Sch. Dist.*, 963 F.2d 248, 252 (9th Cir. 1992) (holding that the first factor weighed in favor of finding the entity was an arm of the state where "funds withdrawn from the [entity's] budget to pay a judgment" would be unavailable for use to fulfill the entity's purposes and, therefore "state funds in the budget must cover" those expenses).

Moreover, MOHELA earns fees for servicing loans on behalf of the USDOE under the Direct Loan Program, and also earns income by holding and servicing MOHELA-owned student loans and servicing student loans made by private lenders. MOHELA does not receive funds directly from the State, but MOHELA's ability to earn revenue derives solely from the authority granted to MOHELA by the legislature under the Missouri Higher Education Loan Authority Act. Absent the statutory mandate to ensure that Missouri postsecondary students have access to student loans, MOHELA would have no source of funds. MOHELA's funding is, therefore, inextricably tied to the State of Missouri. This factor weighs in support of the finding

that MOHELA is an "arm of the state."[4] *See Webb v. Texas Higher Education Coordinating Board*, 2014 WL 12594193, *8 (W.D. Tex. Dec. 12, 2014) (finding that the Texas Higher Education Coordinating Board was entitled to immunity where the State may be forced to pick up the tab for a judgment against the entity).

Given the potential harm to the State of Missouri that a judgment against MOHELA would likely cause, this factor weighs in favor of MOHELA.

### 2.   MOHELA performs central governmental functions.

In assessing the second *Mitchell* factor—whether the entity performs a central governmental function—courts evaluate whether the entity addresses "a matter of statewide rather than local or municipal concern," and the extent to which the state exercises centralized governmental control over the entity. *See Belanger,* 963 F.2d at 253 (internal quotations and citations omitted); *In re Lazar*, 237 F.3d at 983. MOHELA's main function is as the sole state entity devoted to student loan financing and to "assure that all eligible postsecondary education students have access to student loans that are guaranteed or insured, or both[.]" RSMo. § 173.360. This is a state-

---

[4] MOHELA's revenues support four of its legislatively granted powers under the Act:

(1) MOHELA has the power to issue bonds, and secures the bonds it issues "by a pledge of the revenues derived from or by reason of the ownership of student loan notes and investment income or such other funds as may be designated in a bond resolution authorized by the authority." RSMo. § 173.405. Under the Act, any bonds or indebtedness is "payable from and secured" by MOHELA's revenues. RSMo. § 173.385(6), RSMo. § 173.410 ("bonds or other forms of indebtedness…shall be payable solely from the funds provided for [under the Act]"). Likewise, MOHELA can "collect reasonable fees and charges in connection with making and servicing its" financial instruments. RSMo. § 173.385(9).

(2) MOHELA distributes its funds back to the State of Missouri through the LF Fund. RSMo. § 173.392.

(3) Missouri's governors and legislators make scholarship funding requests of the Authority, which has provided over $100 million in funding for college scholarships since its formation. *See* RSMo. § 173.385(6).

(4) MOHELA must "invest any funds not required for immediate disbursement in obligations of the state of Missouri or of the United States government or any instrumentality thereof…" RSMo. § 173.385(13).

wide, not local, mission. As addressed above, the Missouri legislature announced MOHELA's statewide mission "to assure that all eligible postsecondary education students have access to student loans that are guaranteed or insured, or both," and to provide funding for capital and technology projects at Missouri's public colleges and universities. RSMo. § 173.360. The State of Missouri's control over MOHELA touches upon nearly every aspect of its existence, including control over:

- **Leadership:**  MOHELA's seven-member board is controlled by the State, including the appointment of the entirety of MOHELA's board either directly or indirectly by the Governor. RSMo. § 173.360.

- **Assignment:**  MOHELA "is assigned to" the MDHE, which is an executive agency of the State of Missouri. RSMo. § 173.445.

- **Financial Requirements and Limitations**:  The State of Missouri also imposes restrictions on how MOHELA conducts business, including: (i) limitations on investments (RSMo. § 173.385.1(13)), (ii) required distributions to the LCD Fund (RSMo. § 173.392), (iii) limitations on Stafford loan origination (RSMo. § 173.387), and (iv) limitations on the nature of bond issuances to revenue bonds (RSMo. § 173.390).

- **Oversight:**  MOHELA is required to file an annual report of its previous year's income, expenditures, and bonds or other forms of indebtedness issued and outstanding. RSMo. § 173.445. There are also statutory restrictions on MOHELA selling certain loans without MDHE approval. RSMo. § 173.385.1(8).

- **Public Meetings**: "Each meeting of the authority for any purpose whatsoever shall be open to the public. Notice of meetings shall be given as provided in the bylaws of the authority. The proceedings and actions of the authority shall comply with all statutory requirements respecting the conduct of public business by a public agency." RSMo. § 173.365.

"State control of the composition of the board suggests [MOHELA] lacks autonomy and thus may be entitled to Eleventh Amendment immunity." *Lang v. Pennsylvania Higher Educ. Assistance Agency*, 610 F. App'x 158, 162 (3d Cir. 2015); *Karns v. Shanahan*, 879 F.3d 504, 518 (3d Cir. 2018) (finding lack of autonomy where the New Jersey Legislature and Governor maintained "several operational

13

constraints" over an entity, including the ability to appoint the board and the requirement that the entity annually report on its condition and budget); *Good v. United States Dep't of Educ.*, 2022 WL 2191758, at *3 (D. Kan. June 16, 2022), *appeal docketed*, No. 22-3286 (10th Cir. Dec. 30, 2022) (finding "the control that the state exercises over MOHELA through the appointment of the board, limitations on financial expenditures, and requirements for spending and filing reports weighs slightly in favor of finding that MOHELA is an arm of the state[,]" and ultimately granting MOHELA's motion for judgment on the pleadings on immunity grounds in a lawsuit alleging violations of the FCRA). Finally, MOHELA has only those powers expressly provided for or necessarily implied by Missouri law.

MOHELA is charged with ensuring that all eligible postsecondary education students in Missouri have access to student loans, and to provide funding for capital and technology projects at Missouri's public colleges and universities. RSMo. § 173.360. Therefore, MOHELA's "overarching priority for higher education in" Missouri supports a finding that MOHELA acts as arm of the state. *Webb*, 2014 WL 12594193, at *9; *see also Atkins v. Lakes Crossing Center*, 2010 WL 3385354, *2 (D. Nev. Aug. 23, 2010) (finding that this factor weighed in favor of immunity for a state prison mental health facility, noting that the facility "performs its functions . . . statewide rather than with regard to a particular geographical or political subdivision within the state"). The second factor weighs strongly in favor of treating MOHELA as an arm of the state entitled to sovereign immunity.

### 3. MOHELA possesses the authority to sue and be sued in its own name, but only in a court having jurisdiction "over the parties."

RSMo. § 173.385(3) vests MOHELA with the power "[t]o sue and be sued and to prosecute and defend, at law or in equity, ***in any court having jurisdiction of the subject matter and of the parties***." (emphasis added). This ability alone, however, does not compel the conclusion that an entity is not an arm of the state. *See, e.g., State Highway Comm'n of Wyoming v. Utah Const. Co.*, 278 U.S. 194, 197-99 (1929)

(finding suit was "in effect, against the state" even where statute provided entity could sue or be sued). Instead, this factor should be analyzed within the context of determining whether a state has waived its immunity. As the Supreme Court has held, "a state does not waive Eleventh Amendment immunity in federal courts merely by waiving sovereign immunity in its own courts." *Welch v. Texas Dept. of Highways & Public Transp.*, 483 U.S. 468, 473-74 (1987); *Webb*, 2014 WL 12594193, at *9. MOHELA has not affirmatively waived its immunity. *See, e.g., Good*, 2022 WL 2191758, at *5 (finding the statute providing MOHELA authority to sue/be sued did not clearly and explicitly waive MOHELA's sovereign immunity, where it limits suits to "any court having jurisdiction of the subject matter ***and of the parties***") (emphasis in original).

Regarding this inquiry, *Pub. Sch. Ret. Sys. of Missouri* is informative. That decision concluded both the Public School Retirement System of Missouri and the Public Education Employee Retirement System of Missouri, two entities created by the Missouri legislature, were arms of the state, and the court's holding persuasively supports MOHELA's requested relief here.  640 F.3d at 833.  There, the Eighth Circuit Court of Appeals acknowledged the same factor, whether the entity has the ability to sue or be sued, and found those abilities did not "preclude a finding that [the entities] are arms of the State of Missouri." *Id.* at 828. The court reached that conclusion because state statutes greatly restricted the entities' operational independence and extensively regulated the way the entities carry out their limited purpose. *Id.* While MOHELA possesses the authority to sue or be sued, this power does not prohibit a finding that it is an arm of the state. *Belanger*, 963 F.2d at 254-55 (finding this factor "is entitled to less weight than the first two factors" and holding the defendant was an arm of the state despite its ability to sue/be sued); *Sato*, 861 F.3d at 933-4 (same); *U.S. ex rel. King v. Univ. of Texas Health Sci. Center-Houston*, 544 F. App'x 490, 498 (5th Cir. 2013) (Uni. of Texas Health Sci. Ctr.-Houston was an "arm of the state" entitled to immunity even where it had either sued or been sued).

### 4.     MOHELA is entitled to hold and use property.

MOHELA possesses the authority to hold and use property, with such property being exempt from state taxation. RSMo. § 173.415 ("[A]ll properties at any time owned by the authority shall be exempt from all taxation in the state of Missouri."). This fact supports MOHELA's position that it is an arm of the state.  *See Gowens*, 2020 WL 10180669, at *3 (noting that, as a state instrumentality, MOHELA's property, income, bonds, and activities are exempt from state taxation, which supported a finding of immunity); *Karns*, 879 F.3d at 517 (fact defendant was exempt from state taxation weighed in favor of immunity); *Aguon*, 316 F.3d at 903 (in holding defendant was a public entity, noting it "is exempt from taxation"). Similarly, with respect to MOHELA's right to hold and use property, that right is subject to the sole and exclusive management and control of the MDHE, to which MOHELA is assigned, and by a quorum of MOHELA's board, all of whom are appointed directly or indirectly by Missouri's Governor. RSMo. §§ 173.445; 173.360. These facts support the conclusion that MOHELA is an arm of the state. *King*, 544 F. App'x at 497.

### 5.     With respect to MOHELA's corporate status, Missouri statutes and case law view MOHELA as an "arm of the state."

The last *Mitchell* factor examines "the corporate status of the entity." *Mitchell*, 861 F.2d at 201. Here, Missouri law weighs decidedly in favor of MOHELA's position: "[MOHELA] is hereby declared to be performing a public function and to be a separate public instrumentality of the state." RSMo. § 173.415. Missouri statute further defines MOHELA as "a public instrumentality and body corporate," stating that "the exercise by [MOHELA] of [its] powers … shall be deemed to be the performance of an essential public function." RSMo. § 173.360. MOHELA's property, income, bonds, and activities are exempt from state taxation. RSMo. § 173.415; *Karns*, 879 F.3d at 517 (fact that defendant was exempt from state taxation weighed in favor of immunity); *Aguon*, 316 F.3d at 903 (in holding the defendant was

a public entity, noting the entity "is exempt from taxation").

Further, as discussed *supra*, MOHELA is not autonomous; it has a seven-member board that is controlled by the Governor, it is "assigned to" the MDHE, Missouri imposes restrictions on how MOHELA conducts business, MOHELA is subject to oversight and must file an annual report, and MOHELA is required to conduct public meetings. *See, e.g., Alaska Cargo Transp., Inc. v. Alaska R.R. Corp.*, 5 F.3d 378, 381-82 (9th Cir. 1993) (holding fifth factor weighed in favor of immunity where "although ARRC has a separate corporate status. . . it is far from autonomous" and pointing out the governor appointed all 7 of ARRC's board members).

Addressing MOHELA's status earlier this year, the Supreme Court concluded that MOHELA is "part of" the State of Missouri.  The Court held:

> By law and function, MOHELA is an instrumentality of Missouri: It was created by the State to further a public purpose, is governed by state officials and state appointees, reports to the State, and may be dissolved by the State. The Secretary's plan will cut MOHELA's revenues, impairing its efforts to aid Missouri college students. This acknowledged harm to MOHELA in the performance of its public function is necessarily a direct injury to Missouri itself.

*Biden*, 143 S. Ct. at 2366; *see also id.* at 2375 ("Today, we have concluded that an instrumentality created by Missouri, governed by Missouri, and answerable to Missouri is indeed part of Missouri[.]"); *Nebraska*, 52 F.4th at 1047 (Eighth Circuit Court of Appeals stating that "[g]iven this statutory framework, MOHELA may well be an arm of the State of Missouri under the reasoning of our precedent.").

Even before the Supreme Court's holding in *Biden*, other federal district courts concluded that Missouri statute treats MOHELA as an arm of the state.  In *Gowens*, like here, MOHELA was tasked with servicing a student loan for USDOE, and the plaintiff sued MOHELA for violations of the FCRA, as well as violation of another federal statute and common law claims.  2020 WL 10180669, at *1.  MOHELA filed a motion for judgment on the pleadings contending that it was an "arm of the state" of Missouri entitled to immunity.  *Id.* at *2. The Northern District of Alabama applied the Eleventh Circuit's governing test, and correctly concluded that each factor in the

test weighed in MOHELA's favor.  *Id.* at \*2-4 (granting MOHELA's motion for judgment on the pleadings on immunity grounds and dismissing the plaintiff's claims with prejudice).

Interpreting the factor of "how state law treats the entity," the *Gowens* court concluded the "factor weighs ***heavily*** in MOHELA's favor."  2020 WL 10180669, at \*2 (emphasis added).  After noting that Missouri statute declares MOHELA to be performing a public function and that the Missouri legislature established MOHELA as a "public instrumentality and body corporate," the *Gowens* court concluded that "Missouri statutes unambiguously dictate MOHELA to be an 'arm of the state' of Missouri."  *Id.*  (citing *In re Stout*, 231 B.R. 313, 317 (Bankr. W.D. Mo. 1999) (holding that MOHELA is an 'arm of the state' of Missouri and dismissing claims against MOHELA under the Eleventh Amendment)).

Similarly, in *Good*, the plaintiff sued MOHELA and USDOE on FCRA claims related to credit reporting arising out of the plaintiff's student loans.  2022 WL 2191758, at \*1.  MOHELA filed a motion for judgment on the pleadings on immunity grounds.  *Id.*  Assessing a similar factor of "the character of the defendant under state law," the District of Kansas held that "this factor weighs in favor of finding that MOHELA is an arm of the state[,]" and ultimately granted MOHELA's motion.  *Id.* at \*3-\*4.  This final factor weighs heavily in MOHELA's favor.

*In summary*, under the prevailing Ninth Circuit standards, because the State of Missouri has clearly indicated its intention that MOHELA share in its sovereign immunity and the other factors also support that finding, MOHELA is an arm of the state entitled to sovereign immunity.  *See, e.g., Gowens*, 2020 WL 10180669, at \*4 (finding all four factors supported MOHELA's sovereign immunity); *Good*, 2022 WL 2191758, at \*4 (holding that "MOHELA is entitled to Eleventh Amendment immunity as an arm of the State of Missouri"); *Nebraska*, 52 F.4th at 1047 ("MOHELA may well be an arm of the State of Missouri under the reasoning of our precedent.").

That conclusion would also be consistent with many cases involving student loan industry entities (like MOHELA) holding that Eleventh Amendment immunity protects such entities from private suits under federal consumer protection statutes. *See, e.g.*, *Kozaczek v. New York Higher Educ. Services Corp.*, 503 Fed. Appx. 60 (2d Cir. 2012) (New York Higher Education Services Corporation was a state agency, and the Eleventh Amendment barred debtor's FDCPA claim); *Gordon v. Duncan*, 2010 WL 1462555 (D.Or. 2010) (California Student Aid Commission is an agency of the state and the Board of Trustees of California State University is an "arm of the state" and both state entities are entitled to sovereign immunity from debtor's claims under FDCPA and certain other federal statutes); *Little v. Tennessee Student Assistance Corp.*, 537 F. Supp. 2d 942 (W.D. Tenn. 2008) (Tennessee Student Assistance Corporation is a state entity entitled to sovereign immunity from debtor's claims under FDCPA)*; Sorrell v. Illinois Student Assistance Comm'n*, 314 F. Supp. 2d 813 (C.D. Ill. 2004) (Illinois Student Assistance Commission is a state agency, and therefore debtor's claims under the FDCPA and the FCRA are barred by the Eleventh Amendment).

## C.   MOHELA IS ENTITLED TO JUDGMENT ON THE PLEADINGS WITH RESPECT TO PLAINTIFF'S RFDCPA CLAIM (COUNT III).

Even if this Court were to conclude that MOHELA is not immune from this lawsuit, Plaintiff's claims against MOHELA under the RFDCPA rest entirely on California Civil Code § 1788.17.  *See* Complaint, at ¶ 41. That provision requires every "debt collector collecting or attempting to collect a consumer debt" to comply with the FDCPA, 15 U.S.C. §§ 1692b to 1692j.

Where Plaintiff's RFDCPA claim is exclusively predicated on violations of the FDCPA, Plaintiff must establish that MOHELA is a "debt collector" as defined by the FDCPA. *See, e.g., Kemp v. Wells Fargo Bank, N.A.,* No. 17-CV-01259-MEJ, 2017 WL 4805567, at *8 (N.D. Cal. Oct. 25, 2017) (analyzing whether defendant was a "debt collector" as defined under FDCPA when plaintiff's RFDCPA claim relied

solely on purported FDCPA violations); *see also Rockridge Tr. v. Wells Fargo, N.A.,* 985 F. Supp. 2d 1110, 1165 (N.D. Cal. 2013) (dismissing RFDCPA claim premised on same conduct alleged to have violated the FDCPA).

The FDCPA defines "debt collector" as:

[A]ny person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another.

15 U.S.C. §1692a(6).  In its capacity as a servicer of Direct Loans owed to the federal government, MOHELA is not a "debt collector" for two reasons.

**1.     MOHELA is exempted from liability under the FDCPA because it was, at all pertinent times, acting in its capacity as a bona fide fiduciary to USDOE.**

The FDCPA excludes MOHELA from liability because it was, at all pertinent times, acting in the capacity of a bona fide fiduciary to the U.S. Department of Education.  *See* 15 U.S.C. § 1692a(6)(F)(i).  "The FDCPA exempts from the definition of debt collector 'any person collecting or attempting to collect any debt ... owed or due another *to the extent such activity ... is incidental to a bona fide fiduciary obligation.*'"  *Lima v. United States Dept. of Education*, 947 F.3d 1122, 1125 (9th Cir. 2020) (quoting 15 U.S.C. § 1692a(6)(F)) (emphasis added by *Lima* court).

As raised in its Answer (Second Defense), MOHELA is not a "debt collector" subject to the FDCPA because its actions with respect to Plaintiff were "incidental" to its "*bona fide* fiduciary obligation" to the federal government.  *See Lima,* 947 F.3d at 1126-27; *Murungi v. Texas Guaranteed*, 693 F. Supp. 2d 597, 608 (E.D. La.), *aff'd*, 402 F. App'x 849 (5th Cir. 2010) (same).  MOHELA's fiduciary relationship to USDOE is created by detailed federal regulations and the terms of the student loan servicing contract entered into between MOHELA and USDOE.  *Murungi*, 693 F. Supp. 2d at 608-09.  The HEA "was enacted to make the 'benefits of postsecondary education' available to 'youths with financial or cultural need.'"  *Murungi,* 693 F.

Supp. 2d at 609 (quoting 20 U.S.C. § 1070(a)). As addressed above, MOHELA services loans owned by the USDOE under the Direct Loan Program. In this endeavor, "debt collection is merely incidental to [MOHELA's] primary function of guaranteeing student loans made by other entities." *Id.*; *see also Lima*, 947 F.3d at 1127 (finding that defendant Education Management Credit Corporation was not a debt collector where USDOE regulations placed the defendant under a "broader fiduciary role," including requirements that the defendant maintain records, report to the National Student Loan Database System, and properly administer its operating fund).

At their core, Plaintiff's claims against MOHELA relate to its activities to service the Direct Loans that Plaintiff alleges were obtained by an imposter. The process for discharging a Direct Loan on the basis of identity theft is governed by 34 CFR § 685.215. As mandated by USDOE, these procedures require MOHELA to obtain certain information from Plaintiff (*e.g.,* name, SSN, DOB, copy of driver's license, and other information, like a signature exemplar) and to obtain certifications from Plaintiff that he did not sign the promissory note and did not receive or benefit from the proceeds of the loan. *Id.*

In sum, MOHELA was not acting as a "debt collector" under the FDCPA. Its central function was to service the student loans at issue and assist Plaintiff in the required identity theft procedure. To the extent some of MOHELA's actions, including sending correspondence or furnishing information on Plaintiff's credit file, could be perceived as collection activities, those activities are only secondary to its primary purpose of servicing loans pursuant to its statutory powers RSMo. § 173.385. Thus, MOHELA is exempt from the FDCPA on the alleged facts of this case, and by extension Plaintiff's RFDCPA claim resting on the FDCPA fails as a matter of law.

**2.      MOHELA is not a "debt collector" as it began servicing the student loans at or near origination and prior to default.**

Plaintiff's RFDCPA claim should also be dismissed because MOHELA is not

DEFENDANT MOHELA'S NOTICE OF MOTION AND MOTION FOR JUDGMENT ON THE PLEADINGS

a "debt collector" relative to the loans at issue.  Under 15 U.S.C. § 1692a(6)(F)(iii), a person collecting a debt is not a "debt collector" if the collection activity "concerns a debt which was not in default at the time it was obtained by such person."   MOHELA received each of the loans at issue for servicing almost immediately after they were disbursed and, accordingly, those loans were not in default at the time MOHELA began servicing them.  *See* Complaint, at ¶ 13; Answer, Third Defense.

Numerous federal courts have held that a student loan servicer that begins servicing a student loan prior to default is not a debt collector under the FDCPA. *See Willison v. Nelnet, Inc.*, 850 F. App'x 389, 392 (6th Cir. 2021) (affirming summary judgment for defendant student loan servicer, which received student loans for servicing prior to default, because defendant was not a "debt collector" under the FDCPA); *Diaz v. First Marblehead Corp.,* 643 Fed. Appx. 916, 918-19 (11th Cir. 2016); *Brumberger v. Sallie Mae Servicing Corp.,* 84 Fed. Appx. 458, 459 (5th Cir. 2004); *Neal v. Am. Educ. Servs.,* 2019 WL 1746065, at *5-6 (E.D. Cal. 2019); *Khmaissi v. Navient Sols., LLC*, No. C16-5994 BHS, 2018 WL 4811898, at *3 (W.D. Wash. Oct. 4, 2018); *Jones v. Pennsylvania Higher Educ. Assistance Agency*, No. CV1600107RSWLAFMX, 2017 WL 4594078, at *10-11 (C.D. Cal. July 24, 2017); *Spyer v. Navient Solutions, Inc.,* 2016 WL 1046789, at *3 (D.N.J. 2016); *Cedeno v. Navient Sols., Inc.*, No. 16-61049-CIV, 2017 WL 7794290, at *4 (S.D. Fla. Apr. 26, 2017); *Haysbert v. Navient Sols., Inc.*, No. CV 15-4144 PSG (EX), 2016 WL 890297, at *11 (C.D. Cal. Mar. 8, 2016); *Skerry v. Massachusetts Higher Educ. Assistance Corp.,* 73 F. Supp. 2d 47, 54 (D. Mass. 1999).

MOHELA is simply not a "debt collector" under the FDCPA.  As addressed by one California district court:

> Plaintiff claims that the California state version of the FDCPA, the Rosenthal Act, has a broader definition of "debt collector." Plaintiff asserts that this definition "expands the definition of a debt collector and so is consistent with the federal law's intent to protect the consumer." ***Plaintiff does not cite to any authority as to how its argument still applies after the Supreme Court's recent ruling in Henson, which indicates the opposite.*** To the extent that Plaintiff alleges a separate

allegation under California's Rosenthal Act, Civ. Code § 1788, the Rosenthal Act violations are premised on violations of the FDCPA. ***Because Defendant Trinity is not a debt collector under the FDCPA, there is not (sic) predicate for alleged violations of the Rosenthal Act. Plaintiff's claims that Defendant is a debt collector and has violated the FDCPA or the Rosenthal Act are dismissed.***

*Espinosa v. Trinity Fin. Servs., LLC,* No. 217CV06310SVWAGRX, 2017 WL 6942662, at *3 (C.D. Cal. Oct. 19, 2017) (emphasis added). Consequently, MOHELA cannot be liable under the RFDCPA for purported violations that rest exclusively on the FDCPA.   MOHELA is not a "debt collector" because it began servicing the student loans near their inception and prior to default, and thus dismissal is appropriate.

## V. CONCLUSION

WHEREFORE, MOHELA respectfully requests that the Court grant it judgment on the pleadings with respect to Plaintiff's Complaint, and that the Court grant such further relief as it deems just and proper.

DATED:  December 18, 2023          **THOMPSON COBURN LLP**

By:      */s/ Lukas Sosnicki*
         **LUKAS SOSNICKI**
         Attorneys for Defendant HIGHER
         EDUCATION LOAN AUTHORITY OF
         THE STATE OF MISSOURI

1

## <u>CERTIFICATE OF SERVICE</u>

2      I hereby certify that on December 18, 2023, the foregoing was filed

3  electronically with the Clerk of the Court to be served by operation of the Court's

4  electronic filing system to all counsel of record.

5

6                                    _/s/ Lukas Sosnicki_____

7                                    LUKAS SOSNICKI
                                     Attorneys for Defendant HIGHER
8                                    EDUCATION LOAN AUTHORITY
                                     OF THE STATE OF MISSOURI
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28